## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 11 2017, 5:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Letcher,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 11, 2017

Court of Appeals Case No.
49A04-1705-CR-909

Appeal from the Marion Superior Court

The Honorable Barbara Cook-Crawford, Judge

Trial Court Cause No.
49G09-1510-F6-34878

**Bradford, Judge.**

# Case Summary

[1] Appellant-Defendant Robert Letcher was charged with and convicted of Level 6 felony sexual battery, two counts of Level 6 felony criminal confinement, and Class B misdemeanor battery following two separate incidents with a female co-worker. Letcher contends on appeal that his convictions for Count II–Level 6 felony criminal confinement and Count IV–Class B misdemeanor battery violate constitutional prohibitions against double jeopardy. Letcher also contends on appeal that the evidence is insufficient to sustain his convictions for Count I–Level 6 felony sexual battery and Count III–Level 6 felony criminal confinement. Appellee-Plaintiff the State of Indiana ("the State") concedes that Letcher's convictions for Count II–Level 6 felony criminal confinement and his conviction for Count IV–Class B misdemeanor battery violate the prohibitions against double jeopardy and must be vacated. The State argues, however, the evidence is sufficient to sustain Letcher's remaining convictions. Because we agree, we affirm in part, reverse in part, and remand to the trial court with instructions to vacate Letcher's convictions under Count II and Count IV.

# Facts and Procedural History

[2] On the date in question, both Letcher and his victim, Ba.M., worked at the Veteran's Affairs ("VA") Hospital in Indianapolis. During the morning hours of September 10, 2015, Letcher came into her basement office and indicated that she and he were "wanted upstairs." Tr. Vol. II, p. 9. Ba.M., who had been giving instructions to her assistant when Letcher entered the office, indicated

that Letcher should "[g]o on up there" and that she would be upstairs shortly. Tr. Vol. II, p. 10. Letcher "cocked his head to the side" before rushing over to Ba.M. Tr. Vol. II, p. 10. He then "pinned [Ba.M.] back up against [her assistant's] desk and the other desk with [her] arms behind [her]. Pressing his body on [her] body where [she] couldn't move. He had both of [her] arms pinned behind [her]." Tr. Vol. II, p. 10. Letcher "put all his weight on [Ba.M.] and he said, 'I'm tired of you.'" Tr. Vol. II, p. 10. Ba.M. could feel Letcher's stomach and erect penis pressing against her. Letcher also attempted to kiss Ba.M. on her face. Ba.M. indicated that if she had not turned her head when he tried to kiss her, "he would have got a full frontal kiss on me." Tr. Vol. II, p. 26. Letcher pulled away after Ba.M.'s assistant instructed him to "[g]et off her." Tr. Vol. II, p. 10.

[3]     Later that afternoon, Ba.M. again encountered Letcher, this time in a VA Hospital hallway. A security video recording of the encounter demonstrates that while Ba.M. was standing with her back to the wall, Letcher approached Ba.M., impeded her ability to step away from him, and attempted to grab both of her hands and wrists. Ba.M. repeatedly attempted to pull her hands away from Letcher before he was ultimately able to grab ahold of her left wrist. Once Letcher grabbed ahold of her wrist, Ba.M. attempted to remove Letcher's hand from her wrist. Letcher held onto Ba.M.'s wrist for a few moments before letting go of her wrist and allowing her to pass by him. The video further demonstrated that at least one other employee witnessed Letcher's actions. Ba.M. subsequently reported Letcher's actions to VA police officers.

On October 6, 2015, the State charged Letcher with Count I–Level 6 felony sexual battery, Count II–Level 6 felony criminal confinement, Count III–Level 6 felony criminal confinement, and Count IV–Class B misdemeanor battery. The trial court conducted a bench trial on February 28, 2017, after which it found Letcher guilty as charged. The trial court subsequently imposed an aggregate 545-day suspended sentence. This appeal follows.

# Discussion and Decision

## I. Double Jeopardy Concerns

Letcher contends that his convictions for Count II–Level 6 felony criminal confinement and Count IV–Class B misdemeanor battery violate the prohibitions against double jeopardy. Specifically, Letcher argues that these convictions cannot stand because the same evidence that was used to prove Count I was also used to prove Count II, and similarly that the same evidence that was used to prove Counts III was also used to prove Count IV. The State agrees and concedes that the convictions for Count II and Count IV cannot stand and should be vacated. We therefore remand the matter to the trial court with the instruction to vacate Letcher's convictions under Counts II and IV.

## II. Sufficiency of the Evidence

Letcher also contends that the evidence is insufficient to sustain his remaining convictions for Count I–Level 6 felony sexual battery and Count III–Level 6 felony criminal confinement.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

## A. Count I–Level 6 Felony Sexual Battery

[7] In charging Letcher with Count I–Level 6 felony sexual battery, the State alleged as follows:

On or about September 10, 2015, in the morning, Robert Letcher, with the intent to arouse or satisfy the sexual desires of Robert Letcher, did compel [Ba.M.] to submit to a touching by

force or imminent threat of force, to-wit: by physically pushing [Ba.M.] against a wall and attempting to kiss her[.]

Appellant's App. Vol. II–Confidential, p. 22. The Indiana General Assembly has defined the crime of sexual battery as follows:

> (a) A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person:
>    (1) touches another person when that person is:
>        (A) compelled to submit to the touching by force or the imminent threat of force; or
>        (B) so mentally disabled or deficient that consent to the touching cannot be given; or
>    (2) touches another person's genitals, pubic area, buttocks, or female breast when that person is unaware that the touching is occurring;
> commits sexual battery, a Level 6 felony.

Ind. Code § 34-42-4-8.

> "[I]t is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question." *McCarter v. State*, 961 N.E.2d 43, 46 (Ind. Ct. App. 2012) (citing *Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996), [ ]), *trans. denied*. Force "may be implied from the circumstances." *Id.* (citing *Bailey v. State*, 764 N.E.2d 728, 731 (Ind. Ct. App. 2002), *trans. denied*.). Evidence that a victim did not voluntarily consent to a touching does not, in itself, support the conclusion that the defendant compelled the victim to submit to the touching by force or threat of force. *Id.* (citations omitted). "Not all touchings intended to arouse or satisfy sexual desires constitute

sexual battery; only those in which the person touched is compelled to submit by force or imminent threat of force violate Indiana Code section 35-42-4-8." *Id*.

*Frazier v. State*, 988 N.E.2d 1257, 1261 (Ind. Ct. App. 2013) (second set of brackets added).

[8]     Letcher argues on appeal that because kissing is not conduct that is covered in subsection (a)(2) of the sexual battery statute, the State failed to both allege and prove that he committed a sexual battery upon Ba.M.  Letcher, however, fails to acknowledge that a reading of the charging information makes it clear that the State did not allege that he violated subsection (a)(2) of the statute, but rather subsection (a)(1).[1]

[9]     The relevant facts demonstrate that during the morning hours of September 10, 2015, Letcher came into Ba.M.'s basement office and indicated that they were "wanted upstairs."  Tr. Vol. II, p. 9.  Ba.M., who had been giving instructions to her assistant when Letcher entered the office, indicated that Letcher should "[g]o on up there" and that she would be upstairs shortly.  Tr. Vol. II, p. 10.  Letcher "cocked his head to the side" before rushing over to Ba.M.  Tr. Vol. II, p. 10.  He then "pinned [Ba.M.] back up against [her assistant's] desk and the

---

[1] For this reason, Letcher's reliance on our prior opinion in *Ball v. State*, 945 N.E.2d 252 (Ind. Ct. App. 2011), *trans. denied*, is misplaced.  In *Ball*, the State sought to allege that the defendant committed sexual battery under subsection (a)(2) by kissing the victim while the victim was asleep and thus unable to consent. Upon review, we concluded that the fact that the victim was asleep at the time of the attack did not render her equivalent to being mentally disabled or deficient such that she was unable to give consent.  945 N.E.2d at 258.

other desk with [her] arms behind [her]. Pressing his body on [her] body where [she] couldn't move. He had both of [her] arms pinned behind [her]." Tr. Vol. II, p. 10. Letcher "put all his weight on [Ba.M.] and he said, 'I'm tired of you.'" Tr. Vol. II, p. 10. Ba.M. could feel Letcher's stomach and erect penis pressing against her. Letcher also attempted to kiss Ba.M. on her face. Ba.M. indicated that if she had not turned her head when he tried to kiss her, "he would have got a full frontal kiss on me." Tr. Vol. II, p. 26. Letcher pulled away after Ba.M.'s assistant instructed him to "[g]et off her." Tr. Vol. II, p. 10.

[10] These facts are sufficient to prove that Letcher, with intent to arouse or satisfy his own sexual desires, touched Ba.M. and that Ba.M. was compelled to submit to the touching by force. As such, the evidence is sufficient to sustain Letcher's conviction for Level 6 felony sexual battery. Letcher's claim otherwise amounts to nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## B. Count III–Level 6 Felony Criminal Confinement

[11] In charging Letcher with Count III–Level 6 felony criminal confinement, the State alleged as follows:

> On or about September 11[2], 2015, in the afternoon, Robert Letcher did knowingly confine [Ba.M.] without the consent of

---

[2] Although the charging information indicated that the alleged acts took place during the afternoon hours of September 11, 2015, it is undisputed by the parties that the alleged acts actually took place during the afternoon hours of September 10, 2015.

said [Ba.M.], by physically grabbing [Ba.M.] against a wall and forcing her to remain there[.]

Appellant's App. Vol. II–Confidential, p. 23. The Indiana General Assembly has defined the crime of criminal confinement as follows:

> A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement. Except as provided in subsection (b), the offense of criminal confinement is a Level 6 felony.

Ind. Code § 35-42-3-3(a). To "'confine' means to substantially interfere with the liberty of a person." Ind. Code § 35-42-3-1.

[12] Letcher claims that the video contradicts Ba.M.'s testimony. Specifically, he argues that the video demonstrates that "there was no interference, much less substantial interference, with [Ba.M.]'s liberty." Appellant's Br. p. 12. Further, while Letcher concedes that his conduct was "certainly boorish, rude and entirely inappropriate," he claims that "it was simply not the basis for a criminal conviction." Appellant's Br. p. 13. He further claims that if his "clumsy attempt to flirt and to hold hands constitutes the basis for a felony offense, then a whole range of stupid male behavior would be subject to serious criminal liability. The conduct depicted in the video was obnoxious, not criminal." Appellant's Br. p. 13.

[13] Contrary to Letcher's self-serving characterization of the events depicted on the video, we do not believe that the actions depicted in the security camera video were directly at odds with Ba.M.'s testimony. Consistent with Ba.M.'s

testimony, the video shows that while Ba.M. was standing with her back to the wall, Letcher approached Ba.M., impeded her ability to step away from him, and attempted to grab both of her hands. Ba.M. attempted to pull her hands away from Letcher before he was ultimately able to grab ahold of her left wrist. The video demonstrates that once Letcher grabbed ahold of her wrist, Ba.M. tried to remove Letcher's hand from her wrist. Letcher held onto Ba.M.'s wrist for a few moments before letting go of her wrist and allowing her to pass by him. The video further shows that, again consistent with Ba.M.'s testimony, at least one other employee witnessed Letcher's actions.

[14] The video coupled with Ba.M.'s testimony is sufficient to prove that Letcher knowingly or intentionally confined Ba.M. without Ba.M.'s consent. As such, the evidence is sufficient to sustain Letcher's conviction for Level 6 felony criminal confinement. As was the case above, Letcher's claim otherwise amounts to nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## Conclusion

[15] In sum, we agree with the parties that Letcher's convictions under Counts II and IV violate the prohibitions against double jeopardy and must therefore be vacated on remand. We further conclude that the evidence is sufficient to sustain Letcher's remaining convictions under Counts I and III.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

May, J., and Barnes, J., concur.